21 F.3d 419
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Elizabeth PATILLA, Plaintiff, Appellant,
v.
Donna E. SHALALA, SECRETARY OF HEALTH & HUMAN SERVICES,
Defendant, Appellee.
 No. 93-2288
 United States Court of Appeals, First Circuit.
 April 15, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Edward F. Harrington, U.S. District Judge ]
 Sandra L. Smales on brief for appellant.
 Donald K. Stern, United States Attorney, Charlene Stawicki, Special Assistant United States Attorney, and Robert M. Peckrill, Assistant Regional Counsel, Department of Health & Human Services, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Claimant Elizabeth Patilla appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services (the "Secretary") denying her claim for social security disability benefits. Patilla claimed disability stemming from an injury to her right hand sustained in November, 1980. The Administrative Law Judge ("ALJ") concluded that as of June 30, 1983, the date Patilla was last insured, she suffered from "episodic situational depression and sympathetic dystrophy of the right hand," but that those impairments, alone or in combination, did not meet or equal the applicable Listings. See 20 C.F.R. Pt. 404, subpt. P, App. 1.
 
 
 2
 The ALJ did not find Patilla to be a credible witness "insofar as the disabling extent of pain is considered." Although concluding that Patilla was unable to perform her past relevant work as a salad maker, the ALJ found that "the claimant retained the residual functional capacity to perform a full range of light and sedentary unskilled work activity at all times pertinent to this decision." Taking into account Patilla's age, education and work experience, as well as her medical impairments and functional limitations, the ALJ determined that there were a significant number of jobs in the national economy that Patilla could perform. Therefore, he ruled that she was not disabled at any time prior to June, 1983.
 
 
 3
 Based upon our careful review of the parties' briefs and the record on appeal, we find that the Secretary's decision is supported by substantial evidence. We affirm the district court judgment substantially for the reasons stated in the district court's Memorandum and Order dated October 1, 1993. We add the following comments.
 
 
 4
 On appeal, Patilla argues first, that the ALJ erred in rejecting her complaints of disabling pain and in failing to follow the standards for evaluating pain set forth in Avery v. Heckler, 797 F.2d 19 (1st Cir. 1986). Second, she contends that the ALJ should have found that her depression constituted a non-exertional limitation on her ability to function that, in combination with her physical impairments, rendered her disabled. Patilla asserts that the Secretary's contrary conclusions are not supported by substantial evidence.
 
 
 5
 Complaints of Pain.
 
 
 6
 Patilla testified at the hearing before the ALJ that she had experienced constant pain in her hand since her injury. She stated that whenever she tried to use her hand she would experience pain which felt like muscle spasms. Patilla also testified that the cold weather sometimes caused her hand to hurt even though she wasn't using it. She noted that some days she would keep her hand in a hot towel all day or for three or four hours to alleviate the pain. Patilla said that the pain interfered with her ability to concentrate, causing her to stop whatever activity she was engaged in until the pain subsided. She noted that all of these descriptions of her pain applied to the period between November, 1980 and June, 1983.
 
 
 7
 The ALJ found that "[t]he claimant is not accepted as a credible witness insofar as the disabling extent of pain is considered." He concluded that "she could perform a full range of at least light unskilled work activity." Patilla challenges these findings on appeal, arguing that the ALJ failed to follow the standards for evaluating pain set forth in Avery v. Heckler, 797 F.2d 19 (1st Cir. 1986). In Avery, we held that when a claimant alleges pain to an extent not supported by objective medical evidence, "a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered." Id. at 23. See also Social Security Ruling 88-13 (SSR 88-13).
 
 
 8
 Our review of the record indicates that the ALJ complied with the requirements of Avery and SSR 88-13. At a hearing held on July 6, 1992, the ALJ questioned Patilla about her physical condition and her daily activities in 1983, the date she was last insured. Patilla testified that she was "better" in 1983 than in 1992.[1] She stated that she was able to drive and to turn on the ignition with her right hand. She was also able to write and eat with her right hand. Patilla testified that she did her family's laundry.
 
 
 9
 The ALJ questioned Patilla about her prior work record, including two unsuccessful attempts to return to cafeteria work in 1980 and 1981. Patilla testified that she was unable to do even "light duty" cafeteria work because she "started dropping things." Patilla testified that when she tried to use her right hand, it would "start shaking and then it goes numb," causing her to lose control of the hand. She stated that she tries not to use her right hand because it hurts when she uses it and because she drops things. At the hearing, Patilla's attorney elicited a full description of the nature and duration of the pain.
 
 
 10
 In questioning the vocational expert about the availability of work for someone with Patilla's limitations, the ALJ characterized claimant as possessing "reduced ability to use the right arm, reduced manual dexterity and basically was using the right arm for support." The vocational expert testified that in the national economy there is a range of unskilled work at the light and medium exertional levels that involves use of only one arm. He further stated that these jobs could be performed by a person with "mild to moderate impairment to concentration."
 
 
 11
 The record does not support claimant's contention that the ALJ failed to conform with the requirements of Avery. The ALJ credited Patilla's subjective complaints of pain to the extent that he found her to have a reduced ability to use her right arm and to have moderately impaired concentration. The ALJ's determination that Patilla's pain did not render her disabled is supported by substantial evidence in the record. Dr. John McGillicuddy, an examining physician, wrote in October, 1983, that Patilla had a "swollen, painful right hand with marked weakness and limited motions," however, he concluded that she was still capable of doing "extremely light work" with her right hand. In July, 1982, Dr. Upton, an examining physician, reported to the Social Security Administration that although Patilla had experienced pain in her hand in the past, she was not experiencing much pain at that time. According to her own testimony, Patilla was able to use her right hand for many daily activities, including driving, writing and eating. Her return to cafeteria employment had been unsuccessful because of her inability to hold onto things with her right hand, not because of disabling pain. "The credibility determination by the ALJ who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence is entitled to deference, ..." Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987). Therefore, the ALJ did not err in rejecting claimant's complaints of disabling pain.
 
 
 12
 Mental Impairment.
 
 
 13
 The ALJ found that Patilla suffered from "intermittent depression," in addition to her physical impairment. He stated that "[h]er situational depression was episodic only." Therefore, the ALJ concluded that Patilla's capacity for light unskilled work was not compromised by her non-exertional limitations. Patilla challenges these findings as unsupported by substantial evidence. We disagree.
 
 
 14
 The ALJ accurately summarized the medical evidence regarding Patilla's depression. In November, 1982, Dr. Quentin R. Regestine, an examining physician from the Sleep Clinic at Brigham and Women's Hospital, wrote that Patilla reported to him that she lay in bed all day and was "unable to fulfill any responsibilities." A test of ability to concentrate "revealed gross impairment." Dr. Regestine reported, however, that Patilla was "placed on protriptylene and has sustained an initial and significant lessening of her symptoms."
 
 
 15
 There is no other evidence in the record of a mental impairment that existed prior to June, 1983, the date Patilla was last insured. Notes from 1985 indicate that Dr. Regestine saw Patilla for complaints of crying spells and an inability to get out of bed. The notes suggest, however, that those symptoms occurred because Patilla stopped taking her prescribed medication, as a result of constipation. The doctor adjusted the medications and Patilla felt better. In July, 1985, Dr. Regestine examined Patilla and reported that she was "neat, conversational, informative" with "mild psychomotor retardation." He further noted that her current interests and activities included her house and her children and that she visited her mother and was able to "negotiate the city." Patilla was taking protriptylene. The report concluded that the patient was "much improved" and that the prognosis for depression was "good." In 1987, Dr. Ryestine reported that Patilla "does house work and cooking" with her daughters' help and "can be self sufficient." He noted that she was still taking protriptylene and that she had "shown much improvement." She was out of the house and participating in rehabilitation programs.
 
 
 16
 In applying the Medical-Vocational Guidelines, the ALJ properly considered non-exertional factors and concluded that the "paucity of this record" supported a finding that Patilla was not disabled. This conclusion is supported by the record as a whole. The vocational expert testified that if Patilla's concentration were impaired "to a marked or to an extreme extent," it would preclude employment of any kind. Dr. Regestine found that in November, 1982, Patilla showed a "gross impairment" of her ability to concentrate. There is no indication, however, that this impairment persisted for a year or more. In 1986, a "complete psychometric assessment was performed" and Dr. Peter Rosenberger, an examining physician, reported only "an element of attention deficit in the patient's learning style." The diagnosis was of dyslexia "in this otherwise neurologically intact and normally intelligent lady." "It is the responsibility of the Secretary to ... draw inferences from the record evidence. Indeed, the resolution of conflicts in evidence is for the Secretary, not the courts." Irlanda Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's determination that Patilla's mental impairment did not interfere with her residual functional capacity to perform a full range of light unskilled work is substantially supported by the record.
 
 
 17
 Accordingly, we affirm the district court's opinion affirming the Secretary's denial of benefits.
 
 
 
 [1]
 Later in the hearing, Patilla testified that her condition was about the same in 1992 as in 1983